## Randolph v. Commonwealth.

(Decided April 29, 1932.)

W. W. BARRETT for appellant.

BAILEY P. WOOTTON, Attorney General, and FRANCIS M. BURKE, Assistant Attorney General, for appellee.

Opinion of the Court by Drury, Commissioner— Reversing.

Bill Randolph was charged by indictment with murder of Gilbert Looney, and upon his trial was convicted of manslaughter and his punishment fixed at five years in the penitentiary. Looney was a bootlegger. He conducted a blind tiger, in the village of Hellier in Pike county. A small stock of restaurant goods, which he kept and sold, was the blind, and a large stock of moonshine whisky, which he kept and sold, was the tiger. Randolph was a stranger in the community, having recently come there from Harlan county. He wore a belt about his waist with a couple of scabbards attached thereto in which he habitually carried two 44-caliber pistols and from this habit he had acquired the nickname of ''Two Guns.''

About the time of Randolph's coming to this village he was in this blind tiger when some officers entered and made a raid upon the place. Randolph quietly stood there and watched the raid proceed. From his conduct on that occasion Looney and others conceived the idea that Randolph was an under-cover man for the federal government, and they began to so watch and regard him in the community.

It was the custom of Looney on each Saturday night to give a dance in a building adjoining his place. After Randolph had been in the community some three or four weeks, he was, one Saturday night, making a visit at the home of Charles Ritter when two young women, Virgie Bartley and Goldie Trusty, happened in and, after spending a short time, they proposed that they go to the dance, and accordingly Randolph got his automobile and took them and Mr. and Mrs. Ritter to the dance. There was quite an attendance of men but very few women, so that it was necessary for some of the men to take the part of women in the dance. Looney had prepared a stock of refreshments for the dance, of both lawful and unlawful varieties, and seems to have done a rather brisk business, so that the crowd, including Looney, became rather hilarious and the party became what might be termed a trifle rough. Randolph says that between 1 and 2 o'clock some one tapped him on the shoulder and told him he had better leave; that they were going to kill him. Randolph got his party together and went out to his automobile.

He had forgotten his overcoat and returned to the dance hall to get it. The party was breaking up, and when he reached the door Looney was standing there and he accosted Randolph and said to him: "G—— d——n you, I thought you were gone." Randolph explained that he had forgotten his overcoat and said that he would leave as soon as he got it. When he came out Looney said to him, "Hold on there, G—— d——n you," and Randolph turned around and Looney punched him in the side with a pistol and told him he was going to kill him. Randolph started to walk away when Looney caught him by the lapel. of his coat with his left hand and renewed his threats. Randolph began to back away, closely followed by Looney, who continued his threats. The crowd was then leaving hurriedly, automobiles were being started, some of them were Fords, women were screaming, and such an amount of noise was made that people could not hear what was being said. Randolph says he was begging the man to let him alone and that Looney was abusing him and repeating his threats. They backed and scuffled along for about 50 feet, it seems, when they came to a step-off in the sidewalk and Randolph had gone down the step-off and was on the sidewalk in front of a drug store. About that time Charles Ritter came up, put his hand on Looney's shoulder, and said, "For Christ's sake, boys, don't have any trouble." Looney with his left hand either waved or pushed Ritter aside and said: "Charley Ritter, you ain't got nothing to do with this, keep your mouth out of it." Whereupon Randolph, finding Looney's attention diverted, either by Ritter or by Looney's care in stepping down this step-off, drew his pistol and shot four or five times.

Enough of these shots struck Looney that he fell and died immediately. One shot struck Alfred Crank, the man who had made the music for the dance; but there is no suggestion that Randolph intentionally shot at Crank or that the wounding of Crank had any connection with the character of music he had furnished. There is nothing to show that this shooting occurred otherwise than as stated. Dr. Sanders and others found a .38 special pistol by the body of Looney when he got there. Dr. Sanders picked it up and produced it at the trial. Others testified to this pistol being there and to seeing Looney, with the pistol held and pointed at the body of Randolph, during the difficulty.

When Randolph was arrested, the next day, he had on him two .44-caliber pistols, one .38 special, and had two .38 specials and a shotgun in the car in which he was riding. The shotgun, however, had been taken apart and wrapped in paper. He also had on him when arrested a breast plate or armor of some kind. Randolph testified that this armor was furnished to him by the city of Harlan at the time when he was an officer of that city, but that he did not have it on at the party, and that he had put it on that morning because he was going to town to surrender himself to the officers and, as he had to pass through the village of Hellier, he was afraid he would have trouble. The commonwealth showed that this armor was wet, and that Randolph's underwear was wet, and that there was sand on one of his pistols. It is the theory of the commonwealth that in his flight the night before Randolph had fallen into the creek. But it had no evidence to support that. Randolph says that he dropped his overcoat in the creek and one of his pistols, and that he recovered the overcoat that night, but did not get the pistol until the next morning. Randolph's explanation of the dampness of this armor and his underwear is that it is the result of perspiration, caused by the weight of this armor and its lack of porosity.

Randolph objected to the introductions of evidence about this armor and these guns, and this he contends is reversible error, but we do not think so. Of course, if he had had the armor on at the time of the difficulty he would have been in less danger, but the armor would only have protested his torso, and would have afforded no protection to his head, arms, or legs, and there is no evidence that he had it on, so we regard the introduction of the evidence about the armor as so unimportant as to amount to nothing.

Randolph contends this verdict is not sustained by the evidence. We regard that position as well taken. The case of Alf Howard v. Com. (Ky.), 48 S. W. (2d) —, decided April 22, 1932, is so much like this one as to make the reasoning and authorities in it controlling.

Randolph made a motion for a peremptory instruction at the close of the commonwealth's evidence and renewed it at the close of all the evidence. The court overruled it, and this he says was error; but as the evidence upon the next trial may not be the same we reserve that question.

The judgment is reversed.